UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| RICHARD SEZOV, | ) |
| Plaintiff, | ) Civil Action No. 3:05-271-CMC |
| v. | ) |
| | ) ORDER GRANTING MOTION |
| INTOWN SUITES MANAGEMENT, INC., | ) FOR SUMMARY JUDGMENT |
| Defendant. | ) |

This action for recovery of wages under the South Carlina Payment of Wages Act, S.C. Code Ann. § 41-10-10, *et seq*., ("Wage Act") is before the court on Defendant's motion for summary judgment. For the reasons set forth below, the court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law. The court, therefore, grants Defendant's motion in full and directs entry of judgment in Defendant's favor.

## STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369

U.S. 654, 655 (1962). When the nonmoving party has the ultimate burden of proof on an issue, the moving party must identify the parts of the record that demonstrate the nonmoving party lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995). Further, a party may not create a genuine issue of material fact by presenting two conflicting versions of events. *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

## FACTS

The statement of facts set forth in Defendant's motion for summary judgment is adopted by this court as a correct statement of the facts taken in the light most favorable to Plaintiff. This statement of facts is further supplemented in the discussion section of this order. To the extent Plaintiff suggests any different version of the facts in his affidavit, his statements are contradicted by his own deposition testimony as discussed below.

## DISCUSSION

Plaintiff, Richard Sezov ("Sezov"), was employed by Defendant, Intown Suites Management, Inc. ("Intown Suites"), as a courtesy officer for approximately eleven months beginning on February

18, 2004. This employment ended with Sezov's termination in December 2004. Plaintiff affid. ¶ 35. Sezov filed the present action shortly after his termination, alleging that Intown Suites improperly failed to pay him for the ninety-six hours that he was "on call" per week throughout his term of employment. Complaint ¶¶ 8-10. Sezov also alleges that Intown Suites improperly failed to pay him for fifteen of the twenty hours during which he was automatically treated as being "on duty." Complaint ¶11. The latter complaint relates to the treatment of the first fifteen on-duty hours as being in payment for his suite. Both claims are asserted solely under the Wage Act.[1]

Intown Suites moved for summary judgment on October 17, 2005, after full discovery.[2] Dkt No. 10. It first argues that Sezov was fully and properly compensated in accordance with the written terms of his employment agreement. Intown Suites also argues that the agreement is reasonable and, therefore, enforceable as written.

Sezov sought and received an extension of time to respond to this motion based, in part, on the "complexity of the issues." Dkt Nos. 16 & 17. His response to the motion for summary judgment was filed on November 21, 2005. Dkt No. 18. In that response, Sezov disavows any claim that the agreement is unenforceable based on unreasonableness. Dkt No. 18-1 at 8.[3] He argues, instead, that despite the language of the agreement, there is at least a genuine factual dispute as to

---

[1] Although Plaintiff's affidavit contains statements that he was terminated for "no good reason" and that he "was never given a reason for [his] termination," the termination is not, itself, challenged in this action. Plaintiff affid. ¶¶ 35-36.

[2] The deadline for discovery and all subsequent deadlines were extended once, on Plaintiff's unopposed motion.

[3] Expressly disavowing any argument that the employment contract was unreasonable, Plaintiff "contends that, in fact, he was not allowed the freedom to leave the premises, nor was he allowed to spend his on-duty or on-call time on his personal business, as the contract provided." Dkt No. 18-1 at 8-9.

3

whether he was "on duty" (and therefore entitled to pay) during hours designated as "on call" because he "could not leave the premises" during these hours. He also argues that he should not have been charged for his guest suite under the terms of the agreement and that, even if he properly could have been charged he was overcharged at the rate of $12.50 per week.

Defendant filed a reply on December 2, 2005. The matter is now ripe for resolution by this court.

**ON-CALL VERSUS ON-DUTY STATUS.**

Sezov's employment agreement, signed on the date he was hired, explained that he would be on call, but not on duty, seven days per week from the hours of 7 p.m. to 7 a.m. as well as the remaining twelve daytime hours on Sunday. Over the course of a week, during these on-call periods, the agreement required Sezov to make a total of twenty inspections: twice per night between 7 p.m. and 11 p.m. plus six additional inspections between 7 a.m. and 7 p.m. on Sunday. Although each inspection was estimated to require fifteen minutes, the agreement provides that Sezov would be credited with one hour of work for each inspection. The agreement provided for extra pay if Sezov was required to respond to problems outside of these inspection periods.

The employment agreement contains the following statement regarding Sezov's responsibilities and options during his on-call hours:

> I understand that I will be on-call, but not on-duty, during the hours of 7 p.m. and 7 a.m. every day, Sunday through Saturday. During those hours, I am free to leave the employer's premises. I further agree that during my on-call hours, I may effectively utilize my time for my own, personal purposes and that I am entitled to eat, sleep, read, watch television, entertain guests, or engage in other personal activity, unless called or otherwise notified of a problem which requires a response from me.

Plaintiff depos. Ex. 4 (¶2).

Except as discussed in the next section, Plaintiff does not suggest that he was not paid for any on-duty hours as defined by the agreement. Instead, he argues that all hours that he was on call should be treated as on-duty hours. This argument rests on his assertion that he could not, in fact, leave the premises. This factual premise lacks support, even assuming that a presence requirement would convert the hours from on-call to on-duty.[4]

Although Sezov testified that he felt he should be physically present to better respond to any problems which might arise, he conceded that no one ever told him he could not leave the premises. Plaintiff depos. at 48, lines 21-22. ("Nobody told me that I could not leave, that is accurate.") Moreover, his deposition testimony is to the effect that he had no desire to leave the premises, at least during his evening on call hours, and was also affirmatively advised that he had the option of leaving the premises:

> Q:   [B]efore the phone was taken out, were there times that you would leave the property?
>
> A:   No. I had no reason to leave the property after seven o-clock.
>
> Q:   Why did you have no reason to leave the property?
>
> A:   Why would I – why would I leave?
>
> Q:   To go get dinner?

---

[4] Plaintiff offers no authority in support of his legal premise that an employee must be treated as being on duty if he is required to be physically present in employer-provided living quarters, even if otherwise free to sleep, eat, watch television, entertain, or otherwise use his time. The relevant state statute requires only a written agreement as to wages and compliance with that agreement. S.C. Code Ann. § 41-41-10 *et seq*. What authority has been offered (relating to a claim under the Fair Labor Standards Act and Maryland law) supports the premise that one may be required to be on site without being paid as if on duty. *Myer,* 50 Fed. Appx. at 590-91(concluding requirement of physical presence on site was not, alone, enough to require that time on site be treated as "work" under the FLSA).

> A: I usually eat – you know, I had to be on the property at seven o'clock. I made dinner at that time.
>
> Q: Did anyone ever tell you that you couldn't leave the property?
>
> A: No. We had conversations about that. [My manager] would say, well, you know you can leave the property as long as you just call and get your messages.

Plaintiff depos at 43, lines 2-19. *See also* Plaintiff depos. at 57 (conceded that he slept "every night" while on call and also ate during this period).

Sezov also argues that he would have been better able to take advantage of his right to leave the premises if he had a pager or beeper, particularly after his manager removed the courtesy phone that would have allowed residents to reach him if locked out of their rooms.[5] He does not, however, suggest that he ever sought such an accommodation during the term of his employment. Indeed, his testimony, as quoted above, is inconsistent with the suggestion that he was, in fact, deprived of an opportunity to utilize his time as he saw fit by any requirement to be present, self imposed or otherwise.

**DEDUCTION FOR GUEST SUITE**

The employment agreement provides as follows regarding the provision of a guest suite:

> To compensate me for my hours worked, I understand and agree that the Company will provide me with a guest suite at no charge to me and that the reasonable weekly value of this room is $100.00. My acceptance of the guest suite as compensation is voluntary and uncoerced. The value of my room will compensate all hours worked up to 15 hours per week.

---

[5] Plaintiff argues that the removal of the courtesy phone limited residents' ability to contact him in the event of an emergency. To the extent this argument finds support, it would only apply to a resident who did not have access to *any* phone.

Focusing exclusively on the phrase "guest suite at no charge," Plaintiff asserts that Defendant violated the agreement by not paying him for fifteen of his on-duty hours per week. Any ambiguity in this phrase is, however, clarified by clear language of the subsequent sentence that the "value of [the] room will compensate all hours worked up to 15 hours per week." Thus, Plaintiff's argument cannot be accepted as it would require the court to find ambiguity where none exists when the document is read as a whole.

Plaintiff also argues that he was at least overcharged for the room because the agreement values the room at $100 while fifteen hours work at his hourly rate of $7.50 per hour would equal $112.50. Again, this argument would be persuasive only if the court could ignore some language in the agreement and credit other langauge. Read as a whole, the agreement clearly advises Plaintiff what he will be charged for the room: fifteen hours of wages.[6] No authority is offered for the proposition that such a provision is inherently improper or unreasonable.

It is also clear that Plaintiff understood the full intent and effect of this paragraph from the beginning of his employment. This is evidenced by Plaintiff's testimony that he complained, at the time he was hired, about being required to pay, through a reduction of wages, for something that was described as being without charge. *See* Plaintiff depos. at 30 & 31 (explaining his disagreement with being required to pay for the room by stating: "I told them I didn't agree with this. They said, well, if you don't sign the document, you don't get the job. I was in a position where I needed the job, so I signed the document.").

---

[6] The wage rate is not provided in the agreement, but is found in Plaintiff's affidavit at ¶ 23.

## CONCLUSION

For the reasons set forth above, the court concludes that there are no genuine issues of material fact and that the undisputed material facts demonstrate that Defendant is entitled to judgment as a matter of law. Defendant's motion for summary judgment is, therefore, granted in full.

IT IS SO ORDERED.

S/ Cameron McGowan Currie<br>
CAMERON MCGOWAN CURRIE<br>
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina  
December 12, 2005

C:\temp\notesB0AA3C\05-217 sezov v intown suites -- sj (wage act) no R&R.wpd